UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CARLEY WILL, *o/b/o C.M.K.*,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____



**DECISION AND ORDER**

1:18-CV-00291 EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Carley Will ("Plaintiff") brings this action on behalf of C.M.K., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 9), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is granted in part, the Commissioner's motion (Dkt. 9) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

On April 23, 2014, Plaintiff protectively filed an application for SSI on behalf of C.M.K., a child under the age of 18. (Dkt. 5 at 18, 59).[1] Plaintiff alleged C.M.K.'s disability began on March 20, 2013, due to depression, ADHD, and difficulty concentrating. (*Id.* at 18, 60). Plaintiff's application was initially denied on August 12, 2014. (*Id.* at 18, 76-87). On October 18, 2016, a hearing was held before administrative law judge ("ALJ") Timothy M. McGuan. (*Id.* at 18, 40-57). C.M.K. and Plaintiff appeared in Jamestown, New York, and the ALJ presided over the hearing from Buffalo, New York. (*Id.*). On February 9, 2017, the ALJ issued an unfavorable decision. (*Id.* at 15-35). Plaintiff requested Appeals Council review; her request was denied on December 28, 2017, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-6). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or

combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id.* (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id.* (internal quotations and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether C.M.K. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that C.M.K. was born on July 5, 2005, and therefore was a school-age child on April 23, 2014, the date the application was filed and on the date of the written determination. (Dkt. 5 at 21). At step one, the ALJ determined that C.M.K. had not engaged in substantial gainful activity since April 23, 2014, the application date. (*Id.*).

At step two, the ALJ found that C.M.K. suffered from the severe impairment of ADHD (attention deficit hyperactivity disorder). (*Id.*).

At step three, the ALJ found that C.M.K. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listing 112.11, for ADHD. (*Id.*). Similarly, the ALJ found that C.M.K. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id.*). In making this determination, the ALJ considered C.M.K.'s functioning in each of the above-mentioned six domains and concluded that C.M.K. had no limitation in moving about and manipulating objects, caring for himself, and health and physical well-being, and less than a marked limitation in acquiring and using information, attending and completing tasks, and interacting and relating with others. (*Id.* at 27-35). Accordingly, the ALJ found that C.M.K. was not disabled as defined in the Act. (*Id.* at 35).

## II. <u>Remand of this Matter for Further Proceedings is Necessary</u>

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ failed to obtain missing records, and made his determination based on an incomplete record, and (2) the ALJ misstated evidence in the record, and substituted his own judgment for that of the consultative examiner and C.M.K.'s nurse practitioner, Danielle Ross ("NP Ross"). (Dkt. 6-1 at 13-28). For the

reasons set forth below, the Court finds that the ALJ failed to develop the record, and this error necessitates remand for further administrative proceedings.

### A. **Failure to Develop the Record**

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17 Civ. 5392 (GBD) (KHP), 2018 U.S. Dist. LEXIS 197904, at *5 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 U.S. Dist. LEXIS 152800, at *7 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). "The ALJ's duty to develop the record applies to both *pro se* and represented parties, and is heightened in the case of *pro se* plaintiffs." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 U.S. Dist. LEXIS 186600, at *11 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information

. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

In the written determination, the ALJ found that C.M.K. had the severe impairment of ADHD. (Dkt. 5 at 21). The written determination also discusses C.M.K.'s treatment for ADHD, which included counseling at the Chautauqua Center from 2015 through 2016. (*Id.* at 24-25). A review of the treatment notes from Chautauqua Center reveal that prior to receiving treatment there, C.M.K. went to counseling at "CCMH," or Chautauqua County Mental Hygiene. (*See, e.g., id.* at 278, 280). The ALJ acknowledged in the written determination that C.M.K. had seen "providers at [CCMH] for counseling and Dr. Galecki for psychotropic medication management." (*Id.* at 23).

The issue of C.M.K.'s treatment at CCMH was also raised at the administrative hearing. Plaintiff's attorney, Kelly E. Laga, informed the ALJ that C.M.K. was currently in counseling at the Chautauqua Center and had been transferred to that facility from CCMH. (*Id.* at 42). While Ms. Laga was able to obtain C.M.K.'s counseling notes from the Chautauqua Center, those records did not contain C.M.K.'s prior counseling notes from CCMH. (*Id.*). Ms. Laga requested additional time to locate C.M.K.'s counseling notes from CCMH. (*Id.* at 42, 57). At the end of the hearing, the ALJ stated that he would "wait until . . . [he received] those documents." (*Id.* at 57).

On December 15, 2016, Ms. Laga submitted a letter to the ALJ. (Dkt. 6-3 at 1). This letter is attached to Plaintiff's motion papers. The letter informed the ALJ that Ms. Laga unsuccessfully attempted to collect the missing records on September 27, 2016 and October 19, 2016, and followed up on her requests on October 28, 2016, November 15,

2016, and November 29, 2016. (*Id.*). The Chautauqua Center did not return Ms. Laga's voicemails and she had not received the records. (*Id.*). Ms. Laga requested that the ALJ issue a subpoena to secure the records, and attached information pertaining to the providers and dates of records sought by the subpoena, which included medical records dating back to January 2014. (*Id.* at 1-3). Although Ms. Laga's December 15, 2016 letter is not a part of the administrative transcript, the letter is accompanied by a sworn affidavit stating that the letter was submitted to both the ALJ and Defendant. (*See* Dkt. 6-2). There is no evidence that the ALJ either considered or responded to Ms. Laga's request for a subpoena.

Defendant does not contest the validity of the December 15, 2016 letter, the information contained within it, or the fact that Ms. Laga submitted this request to the ALJ. Rather, Defendant argues that an ALJ is not required to subpoena records if it is not necessary. (*See* Dkt. 9-1 at 12). Defendant argues that because the record upon which the ALJ based his determination was sufficient and showed that C.M.K. needed only minor accommodations, the ALJ was not required to subpoena the missing records. (*Id.* at 13-16). Defendant also contends that the agency sent C.M.K. to consultative examinations to resolve any deficiencies in the record. (*Id.* at 14-15). Defendant further notes that Plaintiff's request that the ALJ issue a subpoena was untimely, as she did not submit her request five days before the hearing date. (*Id.* at 12). The Court disagrees that the missing records were not necessary, and finds that Plaintiff's failure to request a subpoena before

the hearing date, or the fact that the agency sent C.M.K. for consultative examinations, does not relieve the ALJ of his duty to develop the record in this instance.

As explained above, "[t]he ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa*, 2016 U.S. Dist. LEXIS 152800, at *7 (quoting *Pratts*, 94 F.3d at 39). Here, the ALJ did not make every reasonable effort to assist Plaintiff in obtaining records from CCMH. The record is clear that C.M.K. received ongoing counseling services to treat symptoms of his ADHD. (*See* Dkt. 5 at 24-25, 55-57, 271-81). It is also clear that over one years' worth of counseling notes were missing from the record, as Ms. Laga explicitly raised the issue of the missing treatment notes with the ALJ on more than one occasion. (*Id.* at 42-43; *see also* Dkt. 6-3). Part of these counseling services included prescriptions for medication to treat C.M.K.'s ADHD, an impairment the ALJ found qualified as serious under the Act. (*See id.* at 23 ("The claimant had a previous diagnosis of ADHD at 5-years old. He was seeing providers at [CCMH] for counseling and Dr. Galecki for psychotropic medication management."); *id.* at 25 ("NP Ross noted the claimant's history of ADHD, for which he was prescribed Adderall by Dr. Galeki."); *id.* at 278, 280 ("He was seeing Dr. Galeki at CCMH.")). In other words, the record is missing treatment notes documenting over one years' worth of mental health evaluations, including the decision to prescribe C.M.K. medications for his serious impairment. These records likely contained information relevant to the ALJ's evaluation of C.M.K.'s alleged disability. Indeed, the ALJ himself acknowledged the importance of the records by stating at the hearing that he would hold the record open until he received them. *See Kennedy v.*

*Comm'r of Soc. Sec.*, No. 17-CV-908-FPG, 2019 U.S. Dist. LEXIS 33093, at *12-13 (W.D.N.Y. Feb. 26, 2019) ("The ALJ himself had determined that such records were pertinent to his determination on plaintiff's claims when he kept the record open and requested these records from BGH following the hearing.").

Plaintiff's December 15, 2016 request for a subpoena was made well in advance of the issuance of the written determination on February 9, 2017. The ALJ should have, at the very least, attempted to secure these records from CCMH to ensure that the record was complete before rendering his decision. *See Harris v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("The fact that the essential treatment records were requested, but not received, does not obviate the ALJ's independent duty to develop the record, particularly since the ALJ could have exercised his power to subpoena them, but did not.") (internal quotations and citations omitted); *Davis v. Colvin*, No. 15-CV-479-MJR, 2016 U.S. Dist. LEXIS 122422, at *23 (W.D.N.Y. Sept. 9, 2016) ("Given the significance of the missing records and the impact their absence had on the ALJ's decision, the ALJ should have tried to obtain the records on his own after not hearing from [the plaintiff's] counsel. By not doing so, the ALJ created a gap in the record that necessitates remand.").

The necessity of the missing records becomes apparent upon consideration of the written determination, particularly with regard to the weighing of opinion evidence from NP Ross, who treated C.M.K. at the Chautauqua Center. (*Id.* at 56, 278-81). On September 26, 2015, NP Ross completed a medical statement regarding ADHD for a child's social security disability claim. (*Id.* at 271-73). NP Ross found that C.M.K. exhibited the following behaviors: often fails to pay close attention to details; has difficulty sustaining

attention in work and play; does not seem to listen when spoken to directly; often does not follow through on instructions and fails to finish tasks; often has difficulty organizing tasks and activities; often avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort; often loses things; is easily distracted by extraneous stimuli; and is often forgetful. (*Id.* at 271). C.M.K. suffered from moderate inattention, and mild impulsiveness and hyperactivity. (*Id.*). Further, C.M.K. had marked limitations in the following categories: age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; and difficulties in maintaining concentration, persistence, or pace. (*Id.* at 271-72).

Regarding C.M.K.'s general limitations caused by his ADHD, NP Ross opined that C.M.K. had marked limitations in the following categories: social functioning (a child's capacity to form and maintain relationships with parents, other adults, and peers; includes the ability to get along with others); personal functioning self-care, which includes personal needs, health, and safety; deficiencies in concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; attending and completing tasks (ability to focus and maintain attention and to begin, carry through, and finish activities); interacting and relating with others (ability to initiate and sustain emotional connection with others, develop and use language, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others); and caring for self (ability to maintain a healthy emotional state, including ability to get emotional wants and needs met in appropriate ways, how patient copes with stress and changes in environment, and whether patient can take care of own health, possessions, and living area). (*Id.* at 272-

73). NP Ross found that C.M.K. had mild limitations for acquiring and using information (ability to learn and use information learned). (*Id.* at 273). Had the ALJ adopted NP Ross's opinion – which indicated that C.M.K. had marked limitations in more than two domains – he would have found C.M.K. to be disabled under the Act. *See Encarnacion*, 568 F.3d at 75 ("For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'") (quoting 20 C.F.R. § 416.926a(a)).

In the written determination, the ALJ gave "some weight" to NP Ross's opinion that C.M.K. had many ADHD symptoms with moderate inattention, mild impulsiveness and hyperactivity, marked cognitive/communication and social functioning skills, and difficulty maintaining concentration, persistence and pace. (*Id.* at 26). The ALJ explained that "[t]he claimant mainly misbehaves as opposed to having the classic symptoms of ADHD." (*Id.*). Further, the ALJ found that NP Ross's opinion that C.M.K. had a marked limitation in attending and completing tasks was not credible, because it was "inconsistent with examination on June 7, 2016, which noted attention and concentration were adequate." (*Id.* at 30).

The Court is cognizant that, as a nurse practitioner, NP Ross's opinion is not entitled to any special weight. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[N]urse practitioners . . . are defined as 'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight.") (citation omitted); *see also Ryder v. Colvin*, No. 1:15-CV-00241 (MAT), 2015 U.S. Dist. LEXIS 168239, at *15 (W.D.N.Y. Dec. 16, 2015)

("Although NP Malinowski is an 'other source' under the regulations, her opinion is entitled to be considered and weighed especially considering the fact that she was one of plaintiff's regular treating sources."). However, the ALJ's explanation for the weight afforded to NP Ross's opinion is insufficient and appears to be a substitution of the ALJ's judgment for that of NP Ross who, although not a medical doctor, has greater training and expertise in the area of mental health than does the ALJ. *See Cutre v. Berryhill*, No. 17-CV-135-FPG, 2018 U.S. Dist. LEXIS 141294, at *9 (W.D.N.Y. Aug. 20, 2018) ("It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this determination without relying on a medical opinion."). The opinion from NP Ross is the only opinion in the record from a treating provider. Had the ALJ possessed the full record upon which NP Ross rendered her opinion (including treatment notes from CCMH), perhaps his reasoning for rejecting or accepting her opinion would have been more complete. *See Shaffer v. Comm'r of Soc. Sec.*, No. 16-CV-874-FPG, 2018 U.S. Dist. LEXIS 187326, at *6 (W.D.N.Y. Oct. 31, 2018) ("Had the ALJ obtained the missing records from Spectrum, it is possible that he would have afforded more weight to NP Turk's opinion, which was favorable to Plaintiff.").

In sum, the ALJ issued his determination based on a medical record he knew was incomplete. The Court recognizes that the record contains information contrary to some of the assessments made by NP Ross; however, the ALJ evaluated this information, and NP Ross's opinion, without the benefit of the complete medical record. The information contained in the missing records likely is important and may influence the ALJ's analysis of opinion evidence in the record, particularly the opinion of NP Ross. On remand, the

ALJ is directed to exercise his duty to develop the record to ensure that it is complete, including working to obtain any missing treatment records from CCMH.[2]

B. **Plaintiff's Remaining Argument**

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the

---

[2] The Court notes that the record also contains an opinion from Rebecca Billings, Ph.D. (*See* Dkt. 5 at 234-38). Dr. Billings found that C.M.K. had marked limitations in attending to, following, and understanding age-appropriate directions, completing age-appropriate tasks, and learning in accordance to cognitive functioning. (*Id.* at 238). C.M.K. also had a "moderate range of difficulties" in adequately maintaining appropriate social behavior on occasion, responding appropriately to changes in the environment, and interacting adequately with adults. (*Id.*). Dr. Billings concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis." (*Id.*). The ALJ gave Dr. Billings's opinion "some weight" in part because "it was noted that the claimant did not take his medication on the morning of the examination." (*Id.* at 26; *see also id.* at 28, 30). A review of Dr. Billings's opinion – which states that "[t]he claimant apparently *did* have his medicines this morning" – reveals that the ALJ's reading of the report is incorrect (emphasis added). On remand, the ALJ should bear in mind that C.M.K. did take his medications on the date of Dr. Billings's examination.

ALJ's analysis may change on these points upon remand"), *adopted*, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                                                                   ELIZABETH A. WOLFORD
                                                                                   United States District Judge

Dated: March 20, 2019
           Rochester, New York